STATE of South Dakota, Plaintiff and Appellee,

v.

Kevin J. WHITE MOUNTAIN, Defendant and Appellant.

No. 17399.

Supreme Court of South Dakota.

Considered on Briefs Sept. 12, 1991.

Decided Oct. 30, 1991.

Mark W. Barnett, Atty. Gen., Pierre, Gary R. Campbell, Asst. Atty. Gen., Pierre, for plaintiff, appellee.

James R. Minick, Minick & McCulloch, Elk Point, for defendant, appellant.

MILLER, Chief Justice.

Kevin J. White Mountain (White Mountain) appeals his judgment of conviction for simple assault and aggravated assault. We affirm.

## FACTS

White Mountain went drinking with his brothers on July 23, 1990. Later that evening he got angry with his wife, Delia White Mountain (Delia). He pushed her around, grabbed her by the hair, and hit her in the face several times.

Delia and her friend LeDean Robinson (Robinson) stayed in a locked trailer until they thought White Mountain was gone. A short time later, as Robinson was walking to a car in the parking lot, White Mountain ran up from behind and grabbed her by the hair. He hit her with his fist several times in the back of her head. She fell to the ground and he repeatedly kicked her in the head and stomach. While Robinson begged him to stop the beating, White Mountain yelled: "Do you want to die? Do you want to die—you know—because you're going to die." Robinson feared for her life. Six trailer park residents called the police while this beating was taking place. White Mountain was still beating Robinson when the police arrived at the scene. White Mountain fled on foot but was caught by a police officer.

An emergency medical technician who lived in the trailer park came out and rendered medical assistance to Robinson. The police offered to take Robinson to the hospital but she declined the offer because she could not afford a hospital bill. Robinson suffered extensive bruising to her head, face, shoulder, neck and abdomen. Five months after the assault she still had sore ribs and a sore forearm.

On July 24, 1990, White Mountain was charged with simple assault under SDCL 22–18–1(5) and aggravated assault under SDCL 22–18–1.1(1). On November 13, 1990, State filed an amended information, which corrected an error in the original information.[1] The amended information also listed several witnesses that were not listed in the original information.

The case was tried before a jury on November 15, 1990. White Mountain moved to exclude all new witnesses named in the amended information or in the alternative, he requested a continuance to prepare for trial with the new witnesses. The trial court denied the motion to exclude the witnesses and the motion for continuance. The jury found White Mountain guilty of simple assault on Delia and aggravated assault on Robinson.

## DECISION

White Mountain contends the trial court should have excluded the new witnesses named in the amended information or should have granted the continuance to prepare for the new witnesses.

SDCL 23A–6–10 provides:

The prosecuting attorney shall endorse upon each information the names of the witnesses known to him at the time of its filing. Any further endorsement of

1. The original information incorrectly identified SDCL 22–18–1.1(5) as the statutory basis for the aggravated assault charge. However, the criminal complaint referenced the correct statute, SDCL 22–18–1.1(1), and the parties and the court treated the case, at all times, as an action under SDCL 22–18–1.1(1).

names upon the information shall be done only with permission of the court. This section shall not preclude calling any witnesses whose names or the materiality of whose testimony is first learned by the prosecuting attorney during the trial. This section does not require the endorsement of names of witnesses which are to be used only in rebuttal.

▬ In other words, the trial judge has discretion in deciding whether to allow late endorsement of witnesses. *State v. Huettl*, 379 N.W.2d 298 (S.D.1985); *State v. Wolford*, 318 N.W.2d 7 (S.D.1982). This Court stated in *Huettl*:

In the absence of some showing that the state's attorney acted in bad faith or abused his position in deliberately withholding the witness' name and that the accused was substantially prejudiced, admission of the testimony will not constitute grounds for reversal.

*Huettl*, 379 N.W.2d at 303.

▬ At trial, White Mountain objected to the late endorsement of these witnesses. The state's attorney argued there was no prejudice because he contended the names of all of the new witnesses were contained in the police report. White Mountain's attorney complained that state's attorney was abusing the process.[2] State's attorney claimed he had just learned of the witnesses that week. Crucially, the trial court established that the new witnesses would only testify about hearing the altercation and calling the police. The trial court consequently viewed their testimony as merely cumulative of the testimony of witnesses properly endorsed in the original information.

After hearing the arguments, the trial judge stated:

All right. It's going to be the ruling of the Court, the motion [to exclude witnesses] is denied. *It's close, however, Mr. Thompson. I have to say you should provide a witness list prior to this time.* I know you're trying to settle the case and there is a difficulty sometimes, but leaving it until the last minute before trial, does put all parties, including the Court, into a position where if the witnesses could have been discovered earlier, their testimony may have been pertinent, very substantial, and the defendant would not have an opportunity to investigate it.

From what you're telling me this morning, that testimony would not be substantially prejudicial to the defendant over and above who was known and reported earlier and was available. Therefore, the motion is denied. That includes the motion to continue, ... (emphasis added).

The trial judge did not approve of the state's attorney's tactics. However, because the evidence of the newly endorsed witnesses was cumulative in nature, the trial court concluded that allowing the witnesses to testify would not be substantially prejudicial to White Mountain's defense.

We do not approve of the Clay County State's Attorney's intentional abuse of relief provisions of the information statute.

---

2. State's attorney explained to the trial court that he always handles informations this way. He files a "preliminary information" and waits until the possibility of plea bargain has been eliminated before he takes the time necessary to make his information accurate and thorough. He doesn't want to waste time preparing a case unless he knows it is going to trial.

State's attorney explained to the trial court:

[B]asically, the first information is usually just a preliminary information. Many of these cases, as you well know, don't go to trial. And I haven't had a problem with any other attorney yet (sic) doing what I've done in this case, ...

    \*   \*   \*   \*   \*   \*

Like I said, too, I have appeared at many trials and formally endorsed the witnesses onto the Information the morning of the trial itself. It's within the trial Court's discretion. I could even learn of witnesses during the trial and ask the Court to allow me to endorse them.

The defendant must show that the State acted in bad faith or abused its position and deliberately withholding witness' names and that the defendant is substantially prejudiced thereby.

However, after carefully reviewing the record, we are convinced the trial court did not abuse its discretion. While the unique facts of this case do not justify reversal, the state's attorney's practices frustrate the purpose of the information statute and could, in another case, seriously jeopardize a criminal defendant's right to a fair trial.

## OTHER ISSUES

■ We have reviewed the record and conclude that there was sufficient evidence to support a conviction under SDCL 22–18–1.1(1). That statute covers *"all* acts, so long as (1) the person either attempted to cause or actually did cause serious bodily injury to another, and (2) the circumstances under which the act was done manifested extreme indifference to the value of human life." *State v. Rash,* 294 N.W.2d 416, 418 (S.D.1980).

The jury heard the evidence and judged the credibility of the witnesses. That testimony proved that White Mountain repeatedly kicked Robinson in the head and stomach and only stopped when the police arrived. While he was beating her he was yelling that she was going to die. "Serious bodily injury" is defined as "such injury as is grave and not trivial, and gives rise to apprehension of danger to life, health or limb." *State v. Janisch,* 290 N.W.2d 473, 476 (S.D.1980). The evidence, viewed in the light most favorable to the verdict, was sufficient to support a jury's conclusion that White Mountain attempted to cause serious bodily injury in circumstances demonstrating extreme indifference to the value of human life.

■ Last, White Mountain complains that he did not receive effective assistance of counsel because his attorney did not interview all of the witnesses listed on the police report. Based on the present state of the record on direct appeal, we cannot hold that White Mountain's representation was "so casual" as to represent a "manifest usurpation" of his constitutional rights. *State v. Jett,* 474 N.W.2d 741, 742–43 (S.D.1991). Affirmed.

SABERS and AMUNDSON, JJ., concur.

WUEST and HENDERSON, JJ., dissent.

HENDERSON, Justice (dissenting).

Here, the state's attorney deliberately withheld the witness' names and the accused was substantially prejudiced.

Clay County State's Attorney, by his own admission on the record, fashioned his own criminal procedure in derogation of SDCL 23A–6–10. He set himself above the law; he knew he was not following the state law. Theodore Roosevelt once expressed: "No man is above nor beneath the Law."

Clay County State's Attorney abused his office and abused legal process. He admitted he withheld the witness' names in this case which he tried to excuse by expressing he "always did it this way." Obviously, this is an unjustifiable reason. He expressed on the record, that he withholds the names of witnesses waiting for the possibility of a plea bargain, of his own choosing. He expressed he did not want to take the time to make an Information accurate or thorough.

Should this Court reward such a practice? No. It should condemn it, not condone it.

Apparently, Mr. State's Attorney of Clay County has a rather cavalier practice of endorsing the witness' names on the Information on the morning of trial. He freely admits to it.

Where does this leave defense counsel? How can any defense counsel adequately prepare a defense when he is taken by surprise on the morning of trial? The answer is: he cannot; defense counsel is caught flat-footed. Approving Mr. State's Attorney's conduct here licenses every State's Attorney to similarly act in South Dakota. Intentional violation of a state statute, thereby depriving a defense lawyer in preparing an adequate defense, is detrimental to a defendant obtaining a fair trial. U.S. Const.Amend. VI and S.D. Const.Art. VI, § 7. It is against the spirit of the Law.

A continuance should have been granted by the trial court. It was not. This lawyer and his client were not treated fair because

the State's Attorney's action denied this defendant an adequate time to adequately prepare for trial. This type of prosecutorial conduct invites ineffective assistance of counsel. It invites defective performance. Trial court abused its discretion in denying a continuance. *State v. Huettl,* 379 N.W.2d 298 (S.D.1985) *; *State v. Wolford,* 318 N.W.2d 7 (S.D.1982).

Any citizen has the right of freedom from the deliberate misuse of legal process, the law, and the courts. Such a freedom includes Kevin White Mountain.

Unfair? Well, pardner, the trial began on November 15, 1990; on November 13, 1990, Mr. State's Attorney filed an Amended Information with *nine* new witnesses. On late Monday, November 13, 1990, defense counsel was notified of this. There was no way possible for the defense lawyer to (a) find these witnesses and (b) interview them before the cock crowed his clarion call as the sun rose in Clay County, in the early morning on the day of trial.

I am authorized to state that Justice WUEST joins in this dissent.

---

* In *Huettl,* at 298 and 303, we declared:

> [A] late endorsement of [a] witness may be allowed in [the] trial court's discretion, and in the absence of some showing *that State's Attorney acted in bad faith or abused his posi-* *tion in deliberately withholding the name of the witness* and that the accused was substantially prejudiced, admission of the testimony will not constitute grounds for reversal. (emphasis supplied mine).